UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| MATTHEW DWAYNE BROCK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 20-215-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Plaintiff Matthew Brock appeals the denial of his claim for disability insurance benefits under the Social Security Act (Act"). [Record No. 1] Brock filed a motion for summary judgment asserting that the Administrative Law Judge ("ALJ") assigned to his case did not properly evaluate his subjective complaints of pain, nor did he properly evaluate the relevant medical evidence. [Record No. 20] He further contends that the ALJ's decision is not supported by substantial evidence. [*Id.*] The Acting Commissioner of Social Security filed a cross-motion for summary judgment, asserting that substantial evidence supports the ALJ's decision. [Record No. 24]

After fully reviewing the record and the parties' briefs, the Court concludes that the ALJ's finding that Brock is not disabled is supported by substantial evidence. Accordingly, the Court will grant the Acting Commissioner's motion and deny the relief sought by Brock.

**I.**

Brock applied for Title II Disability Insurance Benefits under the Act on June 2, 2018, alleging a disability onset date of February 28, 2016. [Administrative Transcript, "Tr." 156-

62]  The Social Security Administration ("SSA") denied his application initially and upon reconsideration.  [Tr. 60, 74]  Brock then filed a written request for an administrative hearing before an ALJ.  [Tr. 104]  The parties appeared for a video hearing on January 3, 2020.  [Tr. 28]  Thereafter, ALJ David Peeples issued a written opinion, concluding that Brock was not disabled under the Act.  [Tr. 15-23]  The Appeals Council subsequently denied Brock's request for review.  [Tr. 1]  As a result, Brock has exhausted his administrative remedies and this matter is ripe for review.  *See* 42 U.S.C. § 405(g).

## II.

Brock was born December 6, 1973, and has a high school education.  [Tr. 35, 39]  He worked previously in the coal mining industry as a supply scoop, foreman, and equipment operator until February 2016.  [Tr. 42-44]  Brock testified he had to stop working in February 2016, after being involved in a severe ATV accident in May 2015, where he lost control of the ATV and injured his head, neck, back, and ribs.  [Tr. 46]  Brock contends that he is impaired due to back, rib, and neck problems; black lung; and mental impairments including depression, anxiety, post-traumatic stress disorder, a sleep disorder, and panic attacks.  [Tr. 35]

Brock was admitted to a hospital on May 25, 2015, for injuries related to the ATV accident.  [Tr. 250-268]  He suffered a head injury and fractured ribs.  [Tr. 270]  He returned to see Dr. Ronald Durbin in late 2016, complaining of low and mid back pain that he described as a feeling of constant burning.  [Tr. 270-83]  The doctor instructed him to attend skilled physical therapy and conduct home exercises to alleviate back pain.  [Tr.  279]  After completing physical therapy, Dr. Durbin and physical therapist Mary A. Meade noted that Brock exhibited a "good prognosis" and that his pain had improved to 2 on a ten-point scale

of severity.  [Tr. 283-84]  On March 1, 2018, Brock had an x-ray of his spine that indicated unremarkable findings.  [Tr. 301-306]

In January 2018, Brock sought treatment from Dr. Jose Echeverria for lung-related issues and continued back pain following the ATV accident.  [Tr. 328]  Dr. Echeverria examined Brock's back, noting that it was normal except for some spinal tenderness.  [Tr. 328]  Treatment notes from March 2018 indicate that Brock's back pain was well-controlled with medication.  [Tr. 320]  Dr. Echeverria also conducted a chest CT and noted that Brock likely suffered from "occupational lung disease, likely coal worker's pneumoconiosis" in January of 2018.  [Tr. 313, 329]  Dr. Echeverria repeatedly urged Brock to quit smoking.  [Tr. 319, 408, 416]

Dr. Echeverria completed a Medical Assessment of Ability to do Work Related Activities (Physical) on December 26, 2019.  [Tr. 457-59]  He indicated on the form that lifting and carrying were affected by Brock's impairments, and that Brock could not lift more than 30 pounds.  [Tr. 457]  But Dr. Echeverria also remarked that Brock's impairments did not affect his ability to stand, walk, or sit.  [Tr. 457-58]  He also checked that Brock could only occasionally climb or balance, and could never stoop, crouch, kneel, or crawl.  [Tr. 458]

State agency medical consultant, Dr. Jack Reed, reviewed Brock's medical records and concluded that Brock had the ability to do medium work with certain limitations.  He found that Brock could occasionally climb, stoop, kneel, crouch, or crawl.  [Tr. 67]  Reed opined that Brock could occasionally lift 50 pounds or frequently lift or carry 25 pounds.  [Tr. 67]  He also stated that Brock would be able to stand or sit with normal breaks for about 6 hours of an 8-hour workday.  [Tr. 67]  Upon reconsideration, Dr. Rebecca Luking reviewed the record and initial assessment, and determined that the prior administrative finding concluding that Brock

was not disabled is consistent with and supported by the medical record.  [Tr. 82]  Both Dr. Reed and Dr. Luking determined that Brock had a residual functional capacity to do medium work.  [Tr. 72, 87]

Dr. A. Dahhan completed a consultative physical examination on October 15, 2018. [Tr. 419]  He noted that Brock was able to ambulate without assistance, but that he had a deformity on his sixth and seventh ribs.  [Tr. 420]  Dahham also indicated that Brock's pulmonary function was normal, but that he did have "scattered expiratory rhonchi and wheeze."  [Tr. 420]

At the same time Brock sought treatment for his back pain and lung issues in January 2018, he also sought treatment for depression and anxiety.  Brock started seeing Dr. Syed Raza and Charlotte Tolaver at Cumberland River Behavioral Health ("CRBH").  [Tr. 331-402] During treatment, he indicated to Tolaver that he suffered from depression, had nightmares about coworkers dying in the coal mines, had difficulty focusing since the ATV accident, and his depression is worse when he is in pain. [Tr. 363, 365]  Tolaver diagnosed major depressive disorder on January 24, 2018, and commenced therapy one to two times per month.  [Tr. 367, 447]  Dr. Raza prescribed Vistaril and Celexa to treat Brock's depression, and also diagnosed posttraumatic stress disorder.  [Tr. 371]  Brock saw Dr. Raza every 2-3 months, and Dr. Raza adjusted Brock's medication as needed.  [Tr. 373]  On March 27, 2019, Brock told a provider at CRBH that things had been "going good" and that the medication that was prescribed seemed to be helping, but that he was still having nightmares.  [Tr. 450]

State agency psychologist Jane Brake, Ph.D., reviewed Brock's record in July 2018. [Tr. 65]  She concluded that Brock had mild limitations in understanding, remembering, or applying information, and to adapt or manage himself.  Brake also concluded that Brock had

moderate limitations in his ability to interact with others and with concentration, persistence, and ability to maintain pace. Upon reconsideration, Christi Bruening, Ph.D., reviewed the medical record and determined that Brock's prior assessment was only partially consistent and supported. [Tr. 70-85] She instead concluded that Brock could understand and recall simple work instructions, could perform simple duties with minimal variations, and could respond appropriately to familiar and expected changes. [Tr. 85] Bruening also noted that Brock could interact with the public on an occasional basis, but could be expected to work better with things than people. [Tr. 85]

As noted, the ALJ conducted a video hearing on January 3, 2020. [Tr. 15] Brock testified during the hearing that he suffered a back injury that impacted his ability to lift and walk. [Tr. 45] He stated that pain made him uncomfortable and consequently, he had to take frequent breaks to sit or lie down. [Tr. 48-49] Brock also explained that he received compensation for black lung, but that he was still smoking one-half a pack of cigarettes a day. [Tr. 45-46] Brock affirmed that depression, anxiety, and a sleep disorder also impacted his ability to function. [Tr. 46] Additionally, a vocational expert testified that, based on Brock's age, education, work experience, and residual functional capacity, an similar hypothetical individual would be able to perform jobs such as industrial cleaner, scrap sorter, laundry laborer. [Tr. 55-56]

On March 3, 2020, ALJ Peeples issued his decision, concluding that Brock was not disabled within the meaning of the Social Security Act between the alleged disability onset and the date he was last insured (December 31, 2019). [Tr. 15] The ALJ, however, determined that Brock suffered from the following severe impairments: history of back and rib injury, black lung, depression, anxiety, and a sleep disorder. [Tr. 17] ALJ Peeples also found that

Brock did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 17]

Next, ALJ Peeples found that Brock had the Residual Functional Capacity ("RFC") to perform "medium work" with the following exceptions:

> he can lift and/or carry 50 pounds occasionally and 25 pounds frequently, could stand and/or walk for six hours in an eight hour workday and sit for six hours in an eight-hour workday, and could occasionally climb ladders/ropes/scaffolds/ramps/stairs, stoop, kneel, crouch, and crawl. He can understand and recall simple instructions and perform simple duties, sustain attention and concentration for extended periods of two hour segments, interact frequently as needed with supervisors and peers and occasionally with the public, and respond appropriately to changes in a routine work setting.

The ALJ also concluded that Brock was unable to perform any past relevant work. [Tr. 21] However, based on the vocational expert's testimony and Brock's age, education, work experience, and residual functional capacity, he determined there were jobs that existed in significant numbers that Brock could have performed through the date he was last insured. [Tr. 22] Accordingly, he concluded that Brock was not disabled from February 28, 2016 (the alleged onset date) through December 31, 2019 (the date Brock was last insured). [Tr. 23]

### III.

A "disability" under the Social Security Act is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en

banc).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. § 404.1520(b).  Second, the claimant must show that he suffers from a severe impairment or a combination of impairments.  20 C.F.R. § 404.1520(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience.  20 C.F.R. § 404.1520(d).  Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination regarding disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether he can perform his past work.  20 C.F.R. § 404.1520(e).  If he can, he is not disabled.  20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work.  If he cannot perform other work, the Commissioner will find the claimant disabled.   20 C.F.R. § 404.1520(g).  "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'"  *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards in reaching his decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## IV.

Brock makes three basic arguments in contending that the Commissioner's decision should be reversed. First, he asserts that the ALJ failed to properly evaluate his subjective complaints of pain. Second, he claims that the ALJ did not properly evaluate the medical evidence. Finally, he argues that the Commissioner's decision is not supported by substantial evidence.

### i.   Subjective Complaints of Pain

Brock first asserts that the ALJ failed to consider his subjective complaints of pain. Regarding this assertion, an ALJ must apply a two-step process for evaluating subjective complaints of pain. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 5180304 (Oct. 25, 2017); *Walters v. Commissioner of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). First, the ALJ must conclude that there is a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. § 404.1529(b). The second step requires that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms find support in the record. 20 C.F.R. § 404.1529(c).

- 8 -

The ALJ properly applied the two-step framework in analyzing Brock's subjective complaints of pain.  At step one, ALJ Peeples indicates that, after considering the evidence, he found "that the claimant's medically determinable impairments could reasonably be expected to produce some of the [] alleged symptoms." [Tr. 20]  But in his analysis under step two, ALJ Peeples explained that, after considering all the evidence, "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [Tr. 19]  The ALJ concluded that the medical evidence establishes that Brock has a history of back and rib injuries, but that while Brock reports residual pain symptoms, his injuries have largely healed, he ambulates freely, and he is not involved in any ongoing pain management treatment.  [Tr. 20]  In this regard, the ALJ explained that x-rays of Brock's spine were unremarkable and treatment notes from health care providers indicated that his pain was well controlled.  [Tr. 20]

Turning to black lung disease, Brock alleged he had trouble breathing and wheezed. However, the ALJ explained Brock was not prescribed any pulmonary medications and that he smoked cigarettes daily, which is inconsistent with disabling black lung symptoms.  [Tr. 20]  Further, Brock's spirometry testing was above listing levels and recent treatment notes evidenced that his lungs were clear.  [Tr. 20]

In considering Brock's mental impairments, the ALJ noted that Brock testified as having symptoms of sadness, panic attacks, flashbacks, and irritability.  [Tr. 20]  However, treatment notes provided "generally mild clinical findings."  [Tr. 20]  For example, the ALJ observed that Brock's treatment notes stated that he presented with "euthymic mood, appropriate judgment, good insight, cooperative behavior, attentive concentration, and clear

speech." [Tr. 20]  And he concluded that "[s]uch clinical findings are inconsistent with the claimant's allegations of disabling mental limitations."  [Tr. 20]  Additionally, in considering alleged insomnia, the ALJ noted that there was no sleep study or treatment that supported Brock's allegations of insomnia or trouble falling asleep.  [Tr. 20]

In summary, the ALJ properly applied the two-step framework for evaluating subjective complaints of pain and his decision is supported by the medical evidence.

### ii.     Evaluation of the Medical Evidence

Brock also contends that the ALJ "completely disregarded a number of [his] medical opinions in making his determination [] finding that [Brock] did not suffer from any significant psychological impairment" and that the ALJ "seriously diminished" the medical evidence substantiating his mental impairments, including the records from CRBH diagnosing him with depression and other mental disorders.  [Record No. 20-1, p. 11]

In considering medical opinions for claims filed after March 27, 2017, the regulations state that the ALJ "will not defer or give specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources."  § 404.1520c(a).  Instead, ALJs now consider the following factors when reviewing medical opinions: supportability; consistency; relationship with the claimant; length of the treatment relationship; frequency of examinations; purpose of the treatment relationship; extent of the treatment relationship; examining relationship; specialization; and other factors such as the source's familiarity with other evidence in the claim or an understanding of the disability program's policies and evidentiary requirements. § 404.1520c(c)(1)-(5).

Here, the ALJ explained that he considered all the medical opinions and findings in the record but did not defer or give any specific evidentiary weight to any prior finding.  [Tr. 21]  While Brock only seems to contest the ALJ's decisions relating to his mental impairments, the Court will also review the ALJ's consideration of the medical evidence relating to Brock's physical impairments. First, considering the medical evidence related to Brock's physical impairments, ALJ Peeples found the state agency medical consultants somewhat persuasive because even though they did not examine Brock they gave specific reasons for their opinions that were grounded within the medical evidence.  [Tr. 21]  The ALJ noted that the state agency medical consultants' proposed limitations were mostly consistent with the mild clinical findings in the record that showed Brock's back and rib injury had healed, he was able to ambulate freely, and his pain was well-controlled with medication,

Additionally, the ALJ considered Dr. Echeverria's treatment records and Medical Assessment of Ability to do Work Related Activities (Physical).  ALJ Peeples provided reasons for finding unpersuasive Dr. Echeverria's determinations, included in the Medical Assessment, indicating that Brock "could lift and carry up to 30 pounds occasionally, could occasionally climb and balance, and should never stoop, crouch, kneel, or crawl."  He explained that the conclusions in the Medical Assessment were "overly restrictive considering the whole record and Dr. Echeverria's generally conservative clinical findings."  [Tr. 21] This conclusion is supported by the record.

Supportability and consistency are the most important factors considered by ALJ's in reviewing the medical evidence.  *See* § 404.1520c(c).  On multiple occasions, Dr. Echeverria examined Brock and found that his back was normal with some spinal tenderness but that his pain was well-controlled with medication.  [Tr. 320-28]  And an x-ray of Brock's back

indicated unremarkable findings on March 1, 2018.  [Tr. 301-06]  Even Brock reported that his back pain was well controlled with medication.  [Tr. 320] Thus, the limitations proposed by Dr. Echeverria in the Medical Assessment were inconsistent and not supported by medical records and his prior clinical findings.

The Medical Assessment of Ability to do Work Related Activities (Physical) is merely a check-box form, that does not provide any explanation for the choices made by Dr. Echeverria.  The Sixth Circuit has previously concluded that ALJs do not err by assigning little weight to medical opinions when the physician simply completed a check-box form, failed to provide an explanation for the restrictions assigned, and did not reference any supporting objective medical evidence.  *See Ellars v. Comm'r of Soc. Sec*., 647 F. App'x 563, 566-67 (6th Cir. 2016); *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474-75 (6th Cir. 2016).  The ALJ adequately considered and explained how he weighed the medical evidence related to Brock's physical impairments.

Brock also argues that the ALJ "seriously diminished" his mental health impairments and failed to find that he suffered from a severe psychological impairment.  At the outset, and contrary to Brock's suggestion, ALJ Peeples *did* find that Brock suffered from three severe psychological impairments: depression, anxiety, and a sleep disorder.  [Tr. 17]   Further, the ALJ considered Brock's mental health treatment records in making his determination.  [Tr. 17] ALJ Peeples utilized the treatment notes from CRBH in concluding that Brock had no more than moderate limitations relating to his mental impairments.  [Tr. 18, 20] The ALJ indicated that, while Brock was involved in some mental health treatment, "the treating providers noted generally mild clinical findings.  Specifically, he was noted to present with euthymic mood, appropriate judgment, good insight, cooperative behavior, attentive concentration, and clear

speech." [Tr. 20]  Dr. Raza also concluded that Brock had coherent thinking and his "thought process was linear and goal oriented." [Tr. 371]  Brock treated with a doctor and a therapist at CRBH every two to three months, and each time his doctors noted that he presented in a normal mood. [Tr. 337, 341, 361, 370-71, 375, 393, 439, 452]  Treatment providers at CRBH did not note any mental limitations in relation to Brock's ability to work and adjusted his medications as needed. [Tr. 367-402, 448-52]  During a follow up on March 27, 2019, Brock told a treatment provider at CRBH that things had been "going good" and the medicine seemed to provide him some relief. [Tr. 450]

ALJ Peeples also considered the assessments and proposed limitations of the state agency psychologists in determining Brock's mental limitations. [Tr. 21]  The ALJ found the state agency psychological consultants' opinions that Brock could "understand and recall simple instructions and perform simple duties, sustain attention and concentration for extended periods of two-hour segments, interact frequently as needed with supervisors and peers and occasionally with the public, and respond appropriately to changes in a routine work setting" persuasive. [Tr. 21]  The ALJ explained why he found the state agency psychologists persuasive and utilized the limitations proposed by them in developing Brock's RFC limitations.   He specifically concluded that Brock "can understand and recall simple instructions and perform simple duties, sustain attention and concentration for extended periods of two hour segments, interact frequently as needed with supervisors and peers and occasionally with the public, and respond appropriately to changes in a routine work setting." The limitations developed were consistent with the opinions of the state agency psychologists and supported by the treatment notes from CRBH, where providers indicated that Brock had

- 13 -

appropriate judgment, good insight, cooperative behavior, and attentive concentration.  [*See, e.g.*, 372, 375.]

The ALJ reasonably evaluated the medical evidence by discussing Brock's treatment history, utilizing his medical records in developing the RFC, and explaining the weight given to the medical sources.

### iii.    Substantial Evidence

Brock asserts that the ALJ's finding that he can perform medium work is not supported by substantial evidence because a review of the record demonstrates he could not perform even sedentary work on a regular basis.  [Record No. 20-1, p. 12]  If the ALJ's decision is supported by substantial evidence, the decision will be affirmed, even if the reviewing court would decide the case differently and even if the claimant's position is also supported by substantial evidence.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).

As discussed in greater detail above, ALJ Peeples considered Brock's multiple impairments, his subjective complaints of pain, his treatment records, and the opinions of multiple medical professionals and consultative examiners in concluding that Brock was not disabled and developing his RFC.  [Tr. 19-23] The ALJ discussed all of Brock's claims and reviewed how each impairment was not sufficiently severe for Brock to be considered disabled.  Further, the ALJ explained the weight given to the medical opinions and consultative examiners' conclusions.  ALJ Peeples' decision that Brock is not disabled is consistent with the relevant medical records demonstrating that Brock's physical pain is well-controlled and which display mild clinical findings.

- 14 -

Accordingly, it is hereby

**ORDERED** as follows:

1.      Plaintiff Matthew Brock's Motion for Summary Judgment [Record No. 20] is **DENIED**.

2.      Defendant Acting Commissioner of the Social Security Administration Kilolo Kijakazi's Motion for Summary Judgment [Record No. 24] is **GRANTED**.

3.      The Acting Commissioner's decision denying benefits under the Social Security Act will be **AFFIRMED** by a separate judgment to be entered this date.

        Dated: October 15, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky

- 15 -